[Cite as *State v. Castorela-Sotela*, 2018-Ohio-2655.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27522 |
| | : | |
| v. | : | Trial Court Case No. 16-CR-3467 |
| | : | |
| CESAR CASTORELA-SOTELA | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 6th day of July, 2018.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ALICE B. PETERS, Atty. Reg. No. 0093945, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45402
       Attorney for Plaintiff-Appellee

JUSTIN M. McMULLEN, Atty. Reg. No. 0088217, 4031 Colonel Glenn Highway, Suite 413, Beavercreek, Ohio 45431
       Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Cesar Castorela-Sotela appeals from his conviction and sentence on charges of rape, kidnapping, domestic violence, and disrupting public services.

{¶ 2} In his sole assignment of error, Castorela-Sotela alleges that he received ineffective assistance of counsel at trial based on his attorney's failure "to examine witnesses on issues of Victim's credibility despite an unfavorable ruling in limine."

{¶ 3} The record reflects that the trial court sustained the State's pretrial motion in limine "to exclude any mention of either [the victim or the defendant] being illegal aliens" (Trial Tr. at 12) or from examining the victim about a "U-visa," which can be available to victims of certain crimes. It also precluded the defense from questioning two unspecified defense witnesses about knowledge of U-visas within the "out of status" Hispanic immigrant community. (*Id.* at 163, 165, 168). In short, the trial court concluded that any testimony related to the legal status of Castorela-Sotela or his wife, who apparently both are in the United States unlawfully, was "off limits." (*Id.* at 175).

{¶ 4} At trial, the State presented evidence that Castorela-Sotela had engaged in forcible sexual conduct with his wife in their bedroom. Following the incident, he went to the restroom, and his wife called 911 to report what had occurred. When Castorela-Sotela returned to the bedroom, he forcibly took his wife's phone and disconnected the call. The State presented evidence that he then knocked his wife to the ground and restrained her when police arrived and knocked on the door. The police had responded to the "911 disconnect call." (*Id.* at 400). After knocking on the door without response for what one officer testified was "five to ten minutes" (*Id.* at 424) and after confirming with the dispatcher that the 911 call had sounded like there had been a struggle in the background

before the disconnect, officers forced entry into the condominium. After about 30 seconds of officers calling out, the victim appeared from a back room. Eventually, after more orders, the defendant also appeared. The victim "was complaining of being struck in the face. She had a cut on the inside of her lip. There was deep bruising on the back -- on the left side of her ear. Bruising on her left arm, and bruising on the inside of her mouth on the right side of her cheek." (*Id.* at 434)

{¶ 5} At trial, Castorela-Sotela testified and admitted engaging in sexual conduct with his wife. He insisted, however, that it was consensual. He also admitted grabbing the phone from her, but he denied striking her or restraining her in any way when police arrived. A jury found Castorela-Sotela guilty of one count of rape, two counts of kidnapping, one count of domestic violence, and one count of disrupting public services. The trial court merged one of the kidnapping counts into the rape count. It then imposed an aggregate eleven-year prison sentence. This appeal followed.

{¶ 6} Castorela-Sotela's assignment of error raises three issues related to the performance of his attorney at trial. First, he contends his attorney provided ineffective assistance by failing to cross examine his wife regarding her awareness of U-visas, which may have provided a motivation for her to fabricate her allegations against him. Second, he alleges ineffective assistance of counsel based on his attorney's failure to examine him about his own immigration status, which may have provided a reasonable explanation for his disconnection of his wife's 911 call and his failure to answer the door when police knocked. Third, he asserts that his attorney provided ineffective assistance by failing to call two defense witnesses who would have testified about the "general awareness" of U-visas in the Hispanic community.

{¶ 7} "Reversal of a conviction for ineffective assistance of counsel requires that the defendant show first that counsel's performance was deficient and second that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 74, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689.

{¶ 8} Upon review, we see no ineffective assistance of counsel arising from the issues cited by Castorela-Sotela. As a threshold matter, we note that the trial court's liminal ruling, which precluded inquiry into the immigration status of Castorela-Sotela and his wife, was a "tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of the evidentiary issue." *State v. Grubb*, 28 Ohio St.3d 199, 201-202, 503 N.E.2d 142 (1986). This anticipatory ruling did not actually " 'determine the admissibility of the evidence to which it [was] directed.' " *Id.* at 201, quoting *Palmer*, Ohio Rules of Evidence Rules Manual (1984), at 446. In order to preserve the evidentiary issues for appeal, defense counsel was required to raise them at trial. Specifically, defense counsel was obligated "to seek the introduction of the evidence by proffer or otherwise in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal."[1] *Id.* at 203. The

---

[1] With regard to Castorela-Sotela's desire to cross examine his wife about her awareness of U-visas, no proffer was required at trial. *See* Evid.R. 103(A)(2) (stating that an "[o]ffer of proof is not necessary if evidence is excluded during cross-examination"). Defense counsel still was required, however, to attempt to at least raise the issue with Castorela-Sotela's wife at trial by asking questions in order to preserve the issue for appeal.

narrow question before us, then, is whether Castorela-Sotela's attorney provided ineffective assistance if he failed to preserve the three evidentiary issues set forth above by not raising them again at trial.[2]

{¶ 9} Taking the issue of Castorela-Sotela's own immigration status first, we are unpersuaded that defense counsel provided deficient representation by failing to question Castorela-Sotela about his own status as an illegal alien. Although the trial court's liminal ruling tentatively precluded any mention of the immigration status of Castorela-Sotela and his wife, he argues that his attorney should have broached the issue again at trial and should have elicited testimony from him about being in the United States illegally. According to Castorela-Sotela, he could have used his status as an illegal alien, and his resulting aversion to contact with law enforcement, to explain why he took his wife's phone and disconnected her 911 call and why he failed to answer the door for an extended period of time when police knocked.

{¶ 10} In our view, however, defense counsel reasonably could have decided not to raise the issue of Castorela-Sotela's immigration status at trial. His aversion to police contact due to his status as an illegal alien would have done nothing to explain his interference with his wife's 911 call. At trial, Castorela-Sotela admitted that he did not know who his wife was talking to when he took her phone and disconnected the call. (Trial

---

[2] In response to Castorela-Sotela's argument, the State contends defense counsel did preserve these issues by attempting to raise them at trial. We disagree. The State cites page 264 of the trial transcript. On that page, however, defense counsel merely sought to refute the victim's claim that that she had been truthful with her employers by asking her whether she had presented valid work documents. In our view, this attempted question was not sufficiently related to the issues addressed in the liminal ruling and now raised on appeal. For purposes of our analysis herein, we will accept Castorela-Sotela's assertion that his attorney failed to preserve at trial the issues raised in his appellate brief.

Tr. at 529-530). In light of that testimony, defense counsel reasonably may have concluded that his immigration status and resulting aversion to police contact would not explain his actions and more likely than not would have been more detrimental than beneficial to the defendant.

{¶ 11} With regard to the police officers' arrival, Castorela-Sotela testified that he and his wife were in the midst of a verbal argument when they knocked, that he was not restraining her, and that neither of them answered the door. (*Id.* at 513-514, 536). Defense counsel reasonably could have concluded that no further explanation for the failure to answer the door was necessary and that introducing evidence of Castorela-Sotela's immigration status would again be more harmful than beneficial. We note too that even if his immigration status might have provided a reason for not promptly opening the door, it would not have provided a defense to any of the charges against him.

{¶ 12} We likewise find no ineffective assistance arising from counsel's failure to attempt to call two witnesses to testify about general awareness of U-visas within the Hispanic community. Castorela-Sotela contends his attorney should have raised this issue—and should have cross examined his wife about her knowledge of U-visas (an issue we will address more fully below)—to establish a motive for her to make false rape allegations against him. HIs theory is that his wife, an illegal alien, falsely accused him of rape because she believed doing so would enable her to obtain a U-visa, which permits victims of sexual assault and other crimes, including kidnapping and domestic violence, lawfully to reside in the United States for a four-year period, which may be extended and ultimately may result in lawful-permanent-resident status. *See* 8 U.S.C. 1101(a)(15)(U), 1184(p), and 1255(m).

**{¶ 13}** With regard to the two potential defense witnesses, whose identity was not made known in the trial court, we cannot say that defense counsel provided ineffective assistance by not seeking to address the U-visa issue with them at trial. Prior to the trial court's liminal ruling, defense counsel did suggest that knowledge of U-visas was common within the illegal-immigrant community and that his two witnesses would testify to that effect. (Trial Tr. at 163, 165). At trial, however, defense counsel never proffered the two witnesses' testimony. Therefore, the record fails to establish with any specificity what they would have said or whether they had first-hand knowledge about Castorela-Sotela's wife's own awareness of U-visas, which would have been the real issue. Under these circumstances, we cannot conclude that defense counsel's failure to attempt to call the two witnesses at trial was unreasonable or that Castorela-Sotela suffered prejudice as a result of counsel's failure to call the witnesses. *Compare State v. Short*, 129 Ohio St. 3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 117 ("Short also fails to show prejudice. The record does not show what those witnesses would have testified to, even if his counsel had called them."); *State v. Wilson*, 2d Dist. Montgomery No. 24577, 2012-Ohio-3098, ¶ 70 ("Although counsel discussed Casey's and Kuhbander's statements prior to opening statements, defense counsel did not proffer Casey's testimony during the trial. And because Casey was not called, we can only speculate as to his testimony. * * * Based on the record, we cannot conclude that defense counsel acted unreasonably in failing to call Casey and Kuhbander or that his failure to do so prejudiced Wilson."); *State v. Williams*, 2d Dist. Montgomery No. 24149, 2011-Ohio-4726, ¶ 32 ("Parenthetically, we cannot determine, based on the record before us, whether counsel's decision not to call the police officers as defense witnesses was a reasonable one. The record does not

reflect what the testimony of those officers would have been and whether it would have affected the outcome of Williams's trial. It is mere speculation that the officers' testimony would have assisted Williams's defense.").

{¶ 14} For much the same reason, we cannot say, on the record before us, that defense counsel provided ineffective assistance at trial by failing to attempt to cross examine Castorela-Sotela's wife about her knowledge of U-visas. Even assuming, arguendo, that the trial court would have reconsidered its liminal ruling and permitted such questioning, we have no way of knowing what she would have said. Defense counsel acknowledged prior to the liminal ruling that he "can't anticipate what she's going to say" if asked about her awareness of U-visas. (Trial Tr. at 166). Defense counsel added: "I can't be confident that if I ask her about [her awareness of U-visas] that she's going to say yes * * *." (*Id.* at 165). Under these circumstances, Castorela-Sotela has failed to demonstrate that he was prejudiced by defense counsel's failure to question the victim about U-visas at trial.[3] In the context of a straight ineffective-assistance-of-counsel claim

---

[3] In reaching this conclusion, we recognize that under Evid.R. 103(A)(2) a proffer is "not necessary" to preserve a ruling for appeal when evidence is excluded during cross examination. But the rule does not relieve defense counsel of the obligation to attempt to pose the question at trial in the first place. *State v. Clark*, 2d Dist. Greene No. 84 CA 60, 1986 WL 8919, *6 (Aug. 12, 1986) ("When counsel seeks to cross-examine about the proscribed subject, he need not proffer expected answers from the witness over whom he presumably lacks control. * * * However, to preserve any claimed error for preventing that supposedly proper cross-examination, counsel must advise the court on the record when he would actually undertake that examination, so that the court is caused to make a ruling on the record disallowing that examination in the actual circumstances then present."). In addition, although the lack of a proffer does not waive an evidentiary ruling on cross examination, the fact remains that Castorela-Sotela cannot establish prejudice for purposes of his ineffective-assistance claim because we do not know what his wife would have said if asked about her awareness of U-visas. *See, e.g., State v. Holt*, 6th Dist. Sandusky No. S-00-021, 2001 WL 279769, *2 (March 23, 2001) (Resnick, J., concurring). If she had testified that she was unaware of U-visas, then defense counsel's failure to question her about them would not have been prejudicial, particularly in the

predicated on not asking questions,[4] Castorela-Sotela simply cannot prevail without establishing what the victim would have said in response.

{¶ 15} Finally, and perhaps ultimately, there is no indication that the trial court erred by limiting admission of evidence of immigration status or that the court would have changed its ruling to permit that testimony. On this record we cannot say that the trial court abused its discretion by excluding the potential evidence when there is corroborating physical evidence of a confrontation, and lack of corroboration that the victim knew about, conspired to obtain, had applied for or was offered U-visa status. On a similar record, the First District concluded that a defendant could not demonstrate that the trial court erred by excluding evidence of a victim's citizenship or immigration status.

---

absence of any other evidence indicating that she was aware of them.

[4] Parenthetically, if defense counsel had attempted to address U-visas with Castorela-Sotela's wife at trial and had been precluded from doing so, an issue might exist regarding a violation of Castorela-Sotela's constitutional right to confront and cross examine his accuser. "To establish a Confrontation Clause violation, a defendant must show that he was prohibited from engaging in otherwise appropriate cross-examination and [that] a reasonable jury might have received a significantly different impression of the witness' credibility had defense counsel been permitted to pursue his proposed line of cross-examination." *State v. Ewing*, 12th Dist. Warren Nos. CA2017-05-062, CA2017-05-063, 2018-Ohio-451, ¶ 12; *but see State v. Mahe*, 2d Dist. Montgomery No. 27309, 2017-Ohio-7516, ¶ 10, fn. 1 ("Appellant suggests obtaining a visa motivated J.R. to fabricate her story in order to remain in the United States. However, this argument that a U visa would necessarily permit J.R. to live and work legally in the United States is not established on this record."); *State v. Morales*, 1st Dist. Hamilton No. C-120670, 2014-Ohio-362, ¶ 32-37 (finding no violation of the Sixth Amendment right of confrontation where the trial court precluded the defendant from inquiring about the victim's immigration status and U-visa benefits she may have been eligible for as a result of her accusations). Here, however, Castorela-Sotela asserts only an ineffective-assistance-of-counsel claim. He does not, and cannot, allege a Confrontation-Clause violation. As set forth above, the trial court's liminal ruling on the U-visa issue was tentative and anticipatory. Because defense counsel never raised the issue at trial, the trial court never actually deprived Castorela-Sotela of his right to confront and cross examine his accuser.

*State v. Morales*, 1st Dist. Hamilton No. C-120670, 2014-Ohio-362, ¶ 35. We agree here.

{¶ 16} For the reasons set forth above, we overrule Castorela-Sotela's assignment of error and affirm the judgment of the Montgomery County Common Pleas Court.

. . . . . . . . . . . . .


WELBAUM, P.J., concurs.

FROELICH, J., concurs in judgment only.


Copies mailed to:

Mathias H. Heck
Alice B. Peters
Justin M. McMullen
Hon. Dennis J. Adkins